IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| CENTRE ONE,<br><br>    Plaintiff,<br><br>  v.<br><br>VONAGE HOLDINGS CORP.,<br>VONAGE AMERICA INC.,<br>VERIZON COMMUNICATIONS INC., and<br>DELTATHREE, INC.,<br><br>    Defendants. | Case No.: 6:08-cv-467 |

**PLAINTIFF CENTRE ONE'S OPPOSITION TO**
**VERIZON COMMUNICATIONS INC.'S MOTION TO DISMISS**

Plaintiff Centre One hereby files this Opposition to Verizon Communications Inc.'s ("VCI") Motion to Dismiss. Defendant VCI has challenged the Court's jurisdiction over it and moved for dismissal under Federal Rule of Civil Procedure 12(b)(2). Centre One respectfully submits that it has established a *prima facie* case of personal jurisdiction based on VCI's actions, including inducing infringement, in Texas, and that this motion should be denied. In the alternative, however, should the Court believe that Centre One has not established a *prima facie* case of personal jurisdiction, Centre One requests an opportunity to take jurisdictional discovery.

**I.  INTRODUCTION**

VCI's actions and conduct in Texas provide a more than adequate basis for this Court to exercise jurisdiction. Indeed, Plaintiff Centre One sued VCI in Texas *because* of the significant contacts between the forum, the parties, and the infringing activities. VCI's course of infringing conduct began with the negotiations it undertook with the sole inventor of the patent-in-suit, Mr.

Feuer, in Texas.[1] Those negotiations involved discussions of Mr. Feuer's pending patent application; telephone calls; the exchange of emails, technical diagrams, and specifications; several meetings at VCI's headquarters in Irving, Texas; and the testing of Mr. Feuer's invention over VCI's broadband network in Texas. However, VCI broke off communications with Mr. Feuer and later, through its operating entities, launched its own infringing products in Texas using the technology Mr. Feuer shared with VCI.

Additionally, the admissions of VCI and deltathree (the company whose VoIP service VCI has resold under the Voicewing name) in their SEC filings demonstrate that VCI is inducing its operating entities – including two Texas entities – to sell infringing products and services in the Eastern District of Texas and elsewhere around the country. These documents show that it was VCI – and not its operating entities – that contracted with deltathree to provide the Voicewing service, that invested in the infrastructure necessary to create its own infringing FiOS service, and that now directs and runs that FiOS service.

Considering the plethora of contacts between VCI and Texas, Centre One believes VCI is subject to personal jurisdiction here. However, should the Court disagree and believe that jurisdictional discovery is necessary, VCI has represented that it would not object to jurisdictional discovery, and the parties have agreed to jointly develop a schedule for such discovery should the Court deem it appropriate.

---

[1] According to its filings with the SEC, Bell Atlantic Corporation, the company now known as Verizon Communications Inc., began doing business as "Verizon Communications" on June 30, 2000. (Bush Decl. Ex. A.). Verizon Communications became Verizon Communications Inc. in October 2000. (*Id.* Ex. B). For ease of reference, "VCI" refers to both "Verizon Communications" and "Verizon Communications Inc."

II.    **LEGAL FRAMEWORK**

Because the Texas long-arm statute coextends to the limits of due process, this Court need only determine whether sufficient contacts exist between VCI and the State of Texas to satisfy Constitutional due process requirements. *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000); *Jacobs Chuck Mfg. v. Shandong Weida Mach. Co.*, No. 2:05-CV-185, 2005 WL 3299718, at *1 (E.D. Tex. 2005). In the context of patent infringement litigation, a court may exercise specific jurisdiction when: (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair. *Akro Corp. v. Luker*, 45 F.3d 1541, 1548-49 (Fed. Cir. 1995). Once a plaintiff satisfies the first two factors of the *Akro* test, the burden shifts to the defendant to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. *Id.* To determine whether specific jurisdiction exists, a court must "examine the relationship among the defendant, the forum, and the litigation to determine whether maintaining the suit offends traditional notions of fair play and substantial justice." *Gundle Lining Const. Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996) (citations omitted).

Centre One need only demonstrate facts sufficient to support a *prima facie* case of personal jurisdiction over VCI. All uncontested facts submitted by Centre One must be taken as true, and all contested facts *must be resolved in Centre One's favor. Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002); *D.J. Invs. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir. 1985).

Where, as here, a defendant is alleged to induce the direct infringement of others in the district, it is subject to personal jurisdiction. *See Kinetic Concepts, Inc. v. Bluesky Med. Corp.*, No. SA-03-CA-832-RF, 2004 WL 2550586 (W.D. Tex. Sept. 24, 2004); *see also Ideal*

3

*Instruments Inc. v. Rivard Instruments Inc.*, 434 F. Supp. 2d 598 (N.D. Iowa 2006). In *Kinetic Concepts*, the Court exercised personal jurisdiction over a foreign company that was alleged to have taken "affirmative actions to facilitate" the direct infringement of another defendant in Texas. *Kinetic Concepts*, 2004 WL 2550586, at *6.

In *Ideal Instruments,* the Court exercised personal jurisdiction over both a Canadian company alleged to have directly infringed, and its president (a Canadian citizen) alleged to have induced the direct infringement by his company in the forum state. *Ideal Instruments*, 434 F. Supp. 2d at 612-615. The Court found that it did have personal jurisdiction over the defendant's president based on the allegations of induced infringement, based in part on his role in organizing and managing the directly infringing sales of his company:

> [The company president], the inducer, directed [his company], the direct infringer, to establish the distribution channels for [its] allegedly infringing product that created a "regular and anticipated" flow of the product into the state of Iowa and more than "unpredictable currents or eddies," and caused, directed, or induced " '[a]dditional conduct of the defendant [that] indicate[s] an intent or purpose to serve the market in the forum State,'" such as directing the "'marketing [of] the [infringing] product through a distributor who has agreed to serve as the sales agent in the forum state.

*Id.* at 615. In addition, the company's president had personally visited the state twice to attend trade shows, and had maintained phone calls and correspondence with distributors in the state. *Id* at 614.

III.    ARGUMENT

   A.    **VCI Is Subject to Personal Jurisdiction in Texas.**

VCI is subject to personal jurisdiction in Texas for reasons similar to those supporting the assertion of personal jurisdiction over nonresident defendants in *Kinetic Concepts* and *Ideal Instruments*.

### 1. VCI Availed Itself of the Texas Forum to Conduct Negotiations with the Inventor of the Patent-in-Suit.

First, like the nonresident defendant in *Ideal Instruments*, VCI availed itself of the Texas forum in order to conduct extensive negotiations with the named inventor, Mr. Donald Feuer. Mr. Feuer is an entrepreneur and the named inventor on United States Patent No. 7,068,668 ("the '668 patent"), which pertains to voice over Internet Protocol ("VoIP") systems and methods. In the late 1990s, Mr. Feuer helped pioneer in the development of VoIP telephony while at CentreCom, a company he founded to provide telecom services. On January 7, 2000, Mr. Feuer filed an application for a patent on one of his inventions that later issued as the '668 patent. Mr. Feuer is now a shareholder in Centre One which owns the '668 patent by assignment.

In 2000, after Mr. Feuer had filed his application for the '668 patent, CentreCom began discussing a joint venture with the newly-formed VCI to market Mr. Feuer's then patent-pending invention on VoIP systems and methods. (Feuer Decl. ¶ 3.) The discussions spanned many months and most occurred at VCI's Irving, Texas headquarters. (*Id.* ¶¶ 3-4.) During those discussions, under a non-disclosure agreement, Mr. Feuer discussed his pending patent application and demonstrated his invention to several executives of VCI. (*Id.* ¶ 3.) The parties, among other things, exchanged technical diagrams and specifications, exchanged e-mail communications and telephone calls, had personal visits at VCI's headquarters in Irving, Texas, and engaged in the testing of CentreCom's VoIP equipment over VCI's broadband network in Texas. (*Id.* ¶ 4).

The joint venture would have allowed VCI to commercialize on a larger scale what CentreCom had commercialized on a small scale. Before completing the venture, however, VCI broke off communications with CentreCom. (*Id.* ¶ 5.) Later, VCI started offering VoIP services utilizing the patented technology it learned from Mr. Feuer in Texas. Notably, it chose to launch its FIOS Digital Voice service in Texas, which "represents the largest market in Verizon's nine-state Southwest region," serving "about 1.3 million local phone lines in the Lone Star State." (Bush Decl. Exs. C & D).

### 2.     VCI Is Inducing the Direct Infringement of its Operating Entities in Texas.

A defendant is liable for inducing infringement where it "actively induces infringement of a patent." 35 U.S.C. § 271(b). Here, like the defendants in *Ideal Instruments* and *Kinetic Concepts,* Centre One alleges that VCI is, at a minimum, inducing the direct infringement in Texas of one or more of its operating entities. Specifically, the evidence indicates that VCI directs and controls the marketing and sale of the infringing VoIP services, such as FiOS Digital Voice and VoiceWing, in Texas.

The evidence reflects that it was the parent company – VCI – and not any of the operating companies, that laid the groundwork for both the VoiceWing and FIOS Digital Voice services. Voicewing is a VoIP service of deltathree that VCI resold until recently under the VoiceWing name. According to deltathree's 10-K submissions, it was not one of the operating companies – but rather VCI itself – that contracted with deltathree to provide the service: "In 2004, we announced our first major service provider contract, with Verizon Communications Inc." (Bush Decl. Ex. E at 2.) With respect to FIOS Digital Voice, the SEC filings of VCI reflect that it was the parent company – and not any of the operating entities – that invested in and built the network for FIOS:

- "We are continuing to build out our FiOS network to be able to meet the future demands in many markets." (*Id.* Ex. F at 10.)

- "To fully leverage this new network infrastructure and allow for the more efficient sharing of our network across services, we are upgrading our multiplexing and routing infrastructure to use IP . . . . In addition, we are migrating from traditional TDM-based voice switching to VoIP." (*Id.*)

- VCI invested "more than $2.5 billion in the past five years in its network infrastructure" in Texas, including in this District. (*Id.* Ex. C.)

It is equally evident that, like the parent company in *Kinetic Concepts,* VCI directs and controls the infringing activities of the operating entities. VCI has two primary reportable segments: (1) Domestic Wireless, which is not relevant to this case, and (2) Wireline, which includes two strategic units, Verizon Telecom and Verizon Business. (*Id.* Ex. E at 3.) Verizon Telecom reported over $20 billion in revenues in 2008 based on the provision of "communication services, including voice, broadband video and data, network access, long distance, and other services to residential and small business customers and carriers." (*Id.* at 9.) VoIP services presumably fall under the afore-listed voice services of Verizon Telecom. According to the Verizon.com website (*Id.* Ex. G.), Daniel Mead, the President of Verizon Telecom and an officer of VCI Communications Inc.:

> … leads an organization of more than 80,000 employees who deliver telephone, internet and entertainment services to millions of residential and business customers across 25 states and the District of Columbia. Under his leadership, Verizon is also marketing the most comprehensive, high speed fiber-optic FiOS technology in the country, providing customers with advanced and innovative broadband and entertainment services.

(*Id.* Ex. H.). It thus appears that the decisionmaking and control over the infringing VoIP services, including FIOS Digital Voice, occurs at the most senior levels of VCI. Moreover, like the defendant in *Kinectic Concepts,* it appears that VCI has taken "affirmative actions to facilitate" the sales of VoiceWing and FIOS Digital Voice through its operating entities in Texas. Based on this coordination and control, it appears that VCI is, at a minimum, inducing direct infringement by its operating entities in multiple states, including Texas (and the Eastern District).

    **3.  These Facts Establish a Prima Facie Showing of Personal Jurisdiction.**

Construed in the light most favorable to Centre One, as they must be, the facts establish a *prima facie* case of specific personal jurisdiction over VCI in Texas. As in *Kinetic Concepts,*

VCI cannot escape personal jurisdiction in Texas by arguing that really a subsidiary – and not the parent company – is responsible for the acts alleged to directly infringe.  In light of VCI's negotiations with Mr. Feuer in Texas, and its inducement of direct infringement by the subsidiaries that actually sell the infringing VoIP services in Texas, it is fair and reasonable for this Court to exercise jurisdiction over VCI.

The cases cited by VCI do not suggest otherwise.  In *Phonotel Commc'ns Inc. v. U.S. Robotics Corp.*, 2001 U.S. Dist. LEXIS 7233 (N.D. Tex. June 1, 2001), unlike here, there were no allegations that the defendant had induced infringement in Texas.  *PrimeSource* and *Payne* are similarly inapposite in that, unlike the situation here, the claims did not relate to and arise out of acts purposefully committed in Texas.  *See PrimeSource Bldg. Prods., Inc. v. Phillips Screw Co.*, No. 3:07-CV-0303-M, 2008 WL 779906 (N.D. Tex. Mar. 25, 2008); *Payne v. County of Kershaw, S.C.*, No. 3:08-CV-0792-G, 2008 WL 2876592 (N.D. Tex. July 25, 2008).

  **B.**  **In the Alternative, Centre One Requests Jurisdictional Discovery.**

Where a motion to dismiss under Rule 12(b)(2) raises issues of fact as to jurisdictional allegations made in a complaint, courts allow the parties to engage in discovery directed at jurisdictional issues.  *See Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982).

Centre One respectfully submits that the facts it has presented here more than carry its burden of making a *prima facie* case for jurisdiction over VCI.  Should the Court however, find that Centre One has not met its burden, Centre One requests access to jurisdictional discovery.  VCI has represented that it does not oppose jurisdictional discovery should the Court deem it appropriate, and the parties have agreed to work together to come up with a proposed schedule for jurisdictional discovery and further briefing.  Should the Court order jurisdictional discovery,

Centre One proposes that the parties submit a jointly proposed schedule for jurisdictional discovery and further briefing within seven calendar days of the Court's ruling.

## IV. CONCLUSION

For the foregoing reasons, Centre One respectfully requests that VCI's motion to dismiss be denied, or in the alternative, that Centre One be permitted to take jurisdictional discovery.

Dated: March 20, 2009

FISH & RICHARDSON P.C.

By: /s/*Jennifer K. Bush*
Thomas M. Melsheimer
Tex. Bar No. 13922550
R. Ritch Roberts III
Tex. Bar No. 24041794
FISH & RICHARDSON P.C.
1717 Main Street
Suite 5000
Dallas, TX 75201
Tel: (214) 747-5070
Fax: (214) 747-2091

Robert M. Parker
Tex. Bar No. 15498000
PARKER, BUNT & AINSWORTH, P.C.
100 E. Ferguson
Suite 1114
Tyler, TX 75702
Tel: (903) 531-3535
Fax: (903) 533-9687

Jennifer K. Bush (Pro Hac Vice)
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Tel: (858) 678-4050
Fax: (858) 678-5099

Attorneys for Plaintiff
Centre One

Of Counsel:

Juanita R. Brooks
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Tel: (858) 678-5070
Fax: (858) 678-5099

Robert E. Hillman
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, MA 02110
Tel: (617) 542-5070
Fax: (617) 542-8906

Michael J. Kane
William R. Woodford
FISH & RICHARDSON P.C.
3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, MN 55402
Tel: (612) 335-5070
Fax: (612) 288-9696

## CERTIFICATE OF SERVICE

      I hereby certify that all counsel of record, who are deemed to have consented to electronic service are being served this March 20, 2009, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).  Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on the same date.

                                          */s/ Jennifer K. Bush*