IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| CENTRE ONE,<br><br>        Plaintiff,<br><br>    v.<br><br>VONAGE HOLDINGS CORP.,<br>VONAGE AMERICA INC.,<br>VERIZON COMMUNICATIONS INC., and<br>DELTATHREE, INC.,<br><br>        Defendants. | Case No.: 6:08-cv-467 |

**PLAINTIFF CENTRE ONE'S COMBINED OPPOSITION TO
VONAGE AND DELTATHREE'S MOTIONS TO TRANSFER**

**I.    INTRODUCTION**

This is a national dispute that potentially involves the activities of nineteen companies located in 12 states (California, Texas, Delaware, Florida, Indiana, Maryland, Massachusetts, New Jersey, New York, Pennsylvania, Virginia, and Washington).[1] The dispute has strong ties to Texas arising from (1) months of negotiations in Texas between the inventor of the patent-in-suit and representatives of Verizon Communications Inc. ("VCI"), (2) the launch of one of the accused products (Verizon's FiOS Digital Voice) in Texas, and (3) sales of the accused products in Texas by two Texas entities. Although Centre One's only party witness is located in California, Centre One has non-party witnesses in California, Kansas, Texas, Arizona, Ohio, and Washington. This Court has refused to transfer at least four cases since February where the

---

[1] At the time the moving papers were filed, Centre One was in negotiations with Verizon Communications Inc. to add some of Verizon's operating entities to this suit. Based on representations by VCI that it is merely a holding company and that the accused Verizon services are actually offered by operating entities, Centre One has filed an unopposed motion to add the fourteen operating entities it believes are offering the accused Verizon services. (*See* Doc. No. 48.) Although Verizon has indicated that some or all of the operating entities may challenge personal jurisdiction, Centre One believes such challenges will be meritless.

witnesses were similarly dispersed across the nation, even where the proposed transferee forum would have been more convenient for some witnesses. It should do the same here.

Vonage and deltathree have idly speculated—without providing any specific information—that their witnesses at trial will hale primarily from the New York metropolitan area and from Israel, and argued that New Jersey is thus a more convenient forum. To the extent these unsupported speculations are given any weight, which the cases indicate they should not be, they simply underscore the fact that the witnesses in this case are dispersed across the country, and that Texas is a more convenient central forum for trial than New Jersey in light of the national nature of this dispute. Accordingly, Defendants' motion to transfer this case should be denied.

## II.     FACTUAL BACKGROUND

### A.     Many Events, Witnesses and Documents Giving Rise to This Litigation Occurred and Are Located Here in Texas.

This case has strong ties to Texas. With respect to the Verizon entities, the relevant events began with business negotiations in Texas between the named inventor of the patent-in-suit, Donald Feuer, and the only original defendant that did not seek to transfer—VCI. In the late 1990s, Mr. Feuer helped pioneer the development of voice-over Internet Protocol (VoIP) telephony while at CentreCom, a company he founded to provide telecom services. As discussed in greater detail in Centre One's opposition to Verizon's pending motion to dismiss (Doc. No. 47 at 5), in 2000 and 2001, Mr. Feuer conducted extensive negotiations with VCI's representatives in Texas regarding a proposed joint venture between CentreCom and VCI. Thus, potential witnesses in this case include VCI employees involved in these licensing negotiations—Everett Williams, Glenn Edelstein, Diane Schauer, Ralph Silvestri, and Russell Sivey—and executives and employees with knowledge of the testing of CentreCom's VoIP equipment over Verizon's broadband network in Texas—Burton Strauss and James Smith, plus Williams, Edelstein, Schauer, Silvestri, and Sivey. Centre One believes that Schauer, Silvestri, Sivey, and Strauss

now reside in Arizona, California, Ohio, and Texas respectively. (Ex. A.) It is unclear where Williams, Edelstein, and Smith live now, but their last known addresses are in Texas. (*Id.*)

### B. Two of the Verizon Operating Entities Centre One Seeks to Join Are Located in Texas.

Two of the operating entities Centre One seeks to join (GTE Southwest Incorporated (d/b/a Verizon Southwest) and Verizon South Inc.) are located in Irving, Texas, only 115 miles from this Court. (Ex. B.) They employ 16,500 people in the state and have spent over $2.5 billion in the past five years to build, among other things, a fiber-optic network that provides their infringing VoIP service to Texas residents. (Ex. C.) Verizon even launched one of its accused products (FiOS Digital Voice) in Texas. (Ex. D.) Naturally, Centre One expects many witnesses and documents regarding these entities and their activities to be located in Texas.

### C. The Remaining Parties, Documents and Witnesses are Scattered Throughout the Country.

Even though many of the documents, witnesses, and parties are here in Texas, other witnesses are spread across the country. VCI utilizes a web of operating entities dispersed throughout the country to make, sell, and market its infringing services, and its relevant documents and witnesses will likely be equally dispersed amongst them. These entities are located in California, Texas, Delaware, Florida, Indiana, Maryland, Massachusetts, New Jersey, New York, Pennsylvania, Virginia, and Washington. (*See* Doc. No. 50; *see also* Ex. E.) Moreover, deltathree expects to have witnesses in Israel. (*See* Doc. No. 39 at 2.) Far form being centralized near New Jersey, Defendants' documents and potential witnesses are apparently dispersed throughout the country and world.

Centre One's evidence and potential witnesses are also spread across the country. During his time at CentreCom, Mr. Feuer dealt with many individuals who have knowledge of his conception, reduction to practice, and attempts to commercialize his invention. For example, upon reducing his invention to practice, Mr. Feuer immediately demonstrated it for Carl Westerlund, who is now located in California. (Ex. A.) In addition, John Campbell and Douglas

Sprauge, both now located in California, worked closely with Mr. Feuer at CentreCom while the invention was being developed and attended many trade shows with Mr. Feuer where they exhibited the invention. (*Id.*) These three individuals will corroborate the timeline of Mr. Feuer's conception and reduction to practice and help establish that he invented the claimed technology before anyone else in the art. In addition, the testimony of Campbell and Sprauge regarding the industry's intense interest in Mr. Feuer's technology immediately after its development will be relevant to both damages and secondary considerations of non-obviousness.

Further, during its efforts to commercialize the invention, CentreCom received investment and technical assistance from Cisco, Sun Microsystems, Ericsson, and Cellstar. Potential witnesses who have knowledge of these activities are scattered throughout the United States, as reflected in the table below.

| Witness | Company | Location |
|---|---|---|
| William Fulton | Cisco | Irvine, CA (current) |
| Richard Villalobos | Cisco | San Jose, CA (last known) |
| Samuel Okapatta | Cisco | Maryland (current) |
| Steven Schwartz | Cisco | San Jose, CA (current) |
| Vincent Vasquez | Sun Microsystems | Sunny Valley, CA (last known) |
| Mark Bahu | Ericsson | Menlo Park, CA (last known) |
| Leslie Green | Ericsson | Menlo Park, CA (last known) |
| Allen Goldfield | Cellstar | Carrollton, TX (last known) |
| Daniel Rippy | Cellstar | Carrollton, TX (last known) |

(Ex. A.) Their testimony will demonstrate the industry's immediate recognition of the value of Mr. Feuer's invention, which is relevant to damages and secondary considerations of non-obviousness.

Finally, deltathree asserts a defense of inequitable conduct challenging Mr. Feuer's representation to the Patent Office that he was incapacitated during his long and painful battle

4

with Crohn's disease and therefore entitled to revive his patent application, which became temporarily abandoned during his illness. (Doc. No. 38 at ¶¶ 20-22.) If deltathree continues to maintain this defense, Centre One expects that Mr. Feuer's physicians from California—Drs. Andrew Ko, Faramarz Kardan, and Mark Stoecker—may be necessary witnesses in this case. (Ex. A.) In addition, Mr. Feuer's patent lawyers, Albin Gess (now located in California), Samuel Korte (now located in Olathe, Kansas), and Thomas Luebbering (now working in Overland Park, Kansas); his wife, Kathleen Feuer; and other attorneys that he attempted to retain, Aaron Barker (now located in Salt Lake City, Utah), and William Niemann (now located in San Juan Capistrano, California) may offer testimony to rebut deltathree's allegations that Mr. Feuer was not "unable to communicate with his counsel" during the period he was seriously ill. (Doc. No. 38 at ¶ 22; Ex. A.)

### III.   LEGAL STANDARDS

The standards for transfer under § 1404 are well-known to this Court. Transfer is only appropriate if the moving party "clearly demonstrate[s]" that the convenience of the parties and witnesses necessitates transfer. *In re Volkswagen of Am. Inc.*, 545 F.3d 304, 314 (5th Cir. 2008). The Court assesses convenience by examining private and public factors. The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of the compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) (applying Fifth Circuit law). The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* That the plaintiff does not itself reside in the forum it has chosen "does not usefully inform the Court's analysis." *Z-Tel Commc'ns, Inc. v. SBC Commc'ns, Inc.*, 331 F. Supp. 2d 567, 572 (E.D. Tex. 2004).

The plaintiff's choice of forum remains an important consideration in the 1404(a) analysis, and Defendants must show "good cause" why that choice should be disturbed. *Volkswagen*, 545 F.3d at 315. This Court has recently reiterated that transfer is unwarranted when the relevant evidence is spread across the nation, even if transfer may be more convenient for some of the witnesses. *MHL Tek, LLC v. Nissan Motor Co.*, 2009 WL 440627 (E.D. Tex. Feb. 23, 2009) (denying transfer to Michigan even though the inventors, prosecutors, and some defense witnesses were located there because the other defendants were spread across the country and globe); *J2 Global Commc'ns, Inc. v. Protus IP Solutions, Inc.*, 2009 WL 440525 (E.D. Tex. Feb. 20, 2009) (denying transfer to California even though it would be more convenient for some witnesses because other witnesses were spread across the country); *Invitrogen v. Gen. Elec. Co.*, 2009 WL 331889 (E.D. Tex. Feb. 9, 2009) (refusing a transfer to Maryland even though that district would be more convenient for some witnesses and provide compulsory process for other witnesses where it would also be less convenient for witnesses residing in California); *Novartis Vaccines and Diagnostics, Inc. v. Hoffman-La Roche Inc.*, 2009 WL 349760 (E.D. Tex Feb. 3, 2009) (denying transfer to North Carolina even though 4 of 14 potential witnesses were located there because it would be less convenient for 5 California witnesses, and the remaining witnesses were dispersed).

## IV. ARGUMENT

The private factors weigh against transfer because the evidence and witnesses are spread across the United States. Transfer will make attending trial less convenient for witnesses located in California, Kansas, Texas, Washington, Utah, and Arizona. The public factors also weigh against transfer because Texas has a local interest in scrutinizing the conduct in Texas of VCI and its two Texas operating entities and because sending the case to New Jersey could double the time to trial  Given these facts, the movants have not "clearly demonstrated" that transfer is warranted.

      **A.**      **The Private Factors Do Not Weigh in Favor of a Transfer.**

            **1.**      **The Relevant Evidence is Equally Accessible Whether this Case Proceeds in Texas or New Jersey.**

Transfer will not facilitate access to either documentary or physical evidence. Documents will surely be exchanged electronically, so their location has little bearing on which forum is more convenient. *J2 Global*, 2009 WL 440525, at *2 ("identifying the location of electronic sources of proof will typically not tip this factor in favor of transfer"); *see also Symbol Techs., Inc. v. Metrologic Instruments, Inc.*, 450 F. Supp. 2d 676, 678 (E.D. Tex 2006).  That aside, the relevant documents are not all concentrated near New Jersey, as Defendants suggest. Centre One's documents are in California.  VCI's documents are likely to be spread across its various operating entities in 13 different states, and its documents related to its testing of Mr. Feuer's invention and the launch of its infringing FiOS product may even be located in Texas.  A number of third-party witnesses, such as the prosecuting attorneys in Kansas (which is twice as far from Newark as it is from Tyler), may have documents as well.  (Ex. F.)  Although transferring the case to New Jersey would bring it closer to Vonage and deltathree's documents, it would move it further from Centre One's and some of the Verizon defendants' counseling against transfer.  *See Novartis*, 2009 WL 349760, at *3 ("While transfer to North Carolina would make access to *some* proof easier, this Court is not convinced that access to all evidence would be so."); *Invitrogen*, 2009 WL 331889, at *2 (finding this factor neutral where "Maryland would be a more convenient venue for some sources of proof, but less convenient for others").

      Vonage and deltathree suggest that they have physical evidence—Vonage's accused products and deltathree's datacenter—in New Jersey.  But Vonage's answer admits that its accused services (and presumably the equipment to use them) are also available in Texas (see Doc. No. 30 at ¶ 7), making access to that physical evidence equally convenient if the case remains here.  As to deltathree, it is not clear that inspection of its datacenters would be necessary, but to the extent it is, deltathree admits it has another datacenter in Atlanta, which is closer to Tyler than it is to Newark.  (Ex. G.)

7

What is more, the facilities VCI used to test Mr. Feuer's invention during its negotiations with him are located in Texas. The Verizon Operating Entities will likely have their facilities and equipment dispersed in 13 states. And Mr. Feuer's prototypes of his invention are located in California, over 1,000 miles closer to Tyler than to Newark. (Ex. H.) Thus, to the extent that inspection of physical facilities is necessary, the relevant facilities are not centralized in the Newark area, weighing against transfer. *See Novartis*, 2009 WL 349760, at *3; *Invitrogen*, 2009 WL 331889, at *2.

That the relevant evidence is spread across the nation distinguishes this case from *TS Tech*, *Volkswagen*, *Odom v. Microsoft Corp.*, 2009 WL 279968 (E.D. Tex. Jan. 30, 2009) and *Partsriver v. Shopzilla*, 2009 WL 279968 (E.D. Tex. Jan. 30, 2009). In each of those cases, **all** the evidence was concentrated in or near the transferee district. That is not the case here, and *Novartis*, which also involved evidence dispersed through the country, expressly distinguishes *TS Tech* and *Volkswagen* on that ground. *See Novartis*, 2009 WL 349760, at *3-4.

### 2. The Movants Have Identified No Witness Who is Unwilling to Attend Trial in Texas But Is Subject to Compulsory Process in New Jersey.

The movants have not identified a single witness who would be subject to compulsory process in New Jersey but unwilling to attend trial in the Eastern District of Texas. The only potential witnesses in New Jersey appear to be Defendants' employees, and they will presumably appear at trial in Texas if asked to do so by Defendants. *LeBouef v. Gulf Operators, Inc.*, 20 F.Supp.2d 1057, 1080 (S.D. Tex. 1998) (availability of compulsory process over defendant's employees in Louisiana did not support defendant's motion to transfer the case there). Moreover, none of Centre One's potential witnesses is subject to compulsory process in New Jersey but not the Eastern District of Texas. Therefore, this factor does not support transfer. *See FCI USA, Inc. v. Tyco Elecs. Corp.*, 2006 WL 2062426, at *2 (E.D. Tex. Jul. 24, 2006) ("Tyco has not shown that there are any witnesses within the range of the subpoena power of the Middle District of Pennsylvania who would be unwilling to travel to the Eastern District of Texas for trial. Therefore, this factor is neutral as to transfer.").

If anything, discovery may reveal that the Verizon defendants have employees with knowledge of either the licensing negotiations with Mr. Feuer or the launch of its FiOS product and who are within the subpoena power of this Court but not the New Jersey court. The Verizon facilities in Irving (where those events took place) are only 115 miles from the Court, and if any of the employees live in Dallas, they would be within 100 miles of this Court. (Exs. A, I.)

### 3. Transfer Will Increase the Cost and Burden of Attending Trial For A Number of Witnesses.

This Court has recently stressed that this District is as convenient as a District closer to only some witnesses when all of the witnesses are spread across the country. For example, in *Novartis*, four witnesses resided in North Carolina and five witnesses resided in California. *See* 2009 WL 349760, at *5. The Court found that this factor did not support transfer to North Carolina because while the four in North Carolina "would clearly find it more convenient to litigate in their own backyard," the other five "would be forced to travel roughly 800 additional miles if the case were transferred." *Id*. Indeed, the Court observed that "the central location of the Eastern District of Texas in relation to this nationwide suit makes it, at the very least, as convenient a location as North Carolina." *Id*. It went on to distinguish both *TS Tech* and *Volkswagen* by explaining that those cases involved a situation where "***all*** identified witnesses were focused within the same geographical region" and would all have to travel further to trial if the case remained in the Eastern District. *Id*. (*Partsriver and Odom* are also distinguishable, for the same reason.)

Likewise, in *Invitrogen*, this Court found that this factor did not support a transfer to Maryland because while the defendant's witnesses were located in New Jersey and England, the plaintiff's witnesses were located in California. *See* 2009 WL 331889, at *3. If the case stayed in Texas, the defendant's witnesses would have to travel an additional 1,000 miles, but if it moved to Maryland then the plaintiff's witnesses would have to travel an additional 1,000 miles. *Id*. This led the Court to conclude that "because neither the District of Maryland nor the Eastern

District of Texas is more convenient for both parties, this factor is neutral with regard to party witnesses." *Id*.

This case presents the same situation as *Novartis* and *Invitrogen*. Although New Jersey may be more convenient for some of the movants' potential witnesses, it would be less convenient for Mr. Feuer (who would have to travel an additional 1,200 miles), and far less convenient for any witnesses associated with the two Verizon operating entities located in Texas, only 115 miles from this Court. There are other Verizon entities in California and Washington whose employees would also be better served if the case stayed in Texas. In addition, there are numerous potential non-party witnesses for whom New Jersey would be less convenient than Texas, as reflected in the table below[2]:

|  | **Witness** | **Additional Travel Distance Required if Case is Transferred** |
|---|---|---|
| (1) | Diane Schauer | 1,300 miles |
| (2) | Burton Strauss | 1,400 miles |
| (3) | Sam Korte, Esq. | 600 miles |
| (4) | Thomas Luebbering, Esq. | 600 miles |
| (5) | Dr. Andrew Ko | 1,200 miles |
| (6) | Dr. Faramarz Kardan | 1,200 miles |
| (7) | Dr. Mark Stoecker | 1,200 miles |
| (8) | Dr. Peter Rothenberg | 1,200 miles |
| (9) | William Fulton | 1,200 miles |
| (10) | Steven Schwartz | 1,100 miles |
| (11) | Aaron Barker, Esq. | 600 miles |
| (12) | Al Goldfield | 1,400 miles |
| (13) | Albin Gess, Esq. | 1,200 miles |

---

[2] This list is made based on Centre One's preliminary knowledge of the case and without the benefit of any discovery. Thus, Centre One expects that this list of potential witnesses may be refined and/or pared back as discovery progresses and the issues in dispute are narrowed.

| (14) | Carl Westerlund | 1,200 miles |
|---|---|---|
| (15) | Daniel Rippy | 1,400 miles |
| (16) | Douglas Sprauge | 1,200 miles |
| (17) | John Campbell | 1,200 miles |
| (18) | Kathleen Feuer | 1,200 miles |
| (19) | Leslie Green | 1,000 miles |
| (20) | Mark Bahu | 1,000 miles |
| (21) | Richard Villalobos | 1,000 miles |
| (22) | Vincent Vasquez | 1,200 miles |
| (23) | William Nieman, Esq. | 1,200 miles |
| (24) | Ralph Silvestri | 1,100 miles |

(Exs. A, J.)  There may be even more, depending on where the non-party witnesses whose identities are presently unknown are located.  Also, the parties' expert witnesses will be key participants at trial, and there is no reason to think New Jersey will be clearly more convenient for them than Texas.  *MHL Tek*, 2009 WL 440627, at *4 ("[T]his Court has presided over numerous patent cases and is of the opinion that a great number of witnesses at trial will be expert witnesses, who could come from anywhere around the country or the world.").  This is not a case like *Volkswagen*, *TS Tech*, *Odom*, and *Partsriver*, where all the witnesses are concentrated in a region close to the proposed transferee forum.

In contrast to Centre One's detailed identification of party and non-party witnesses who would be inconvenienced by transfer and the topics about which they may testify at trial, the movants did not specifically identify ***a single*** witness they plan to call or the witness's location.  This deprives the Court of the ability to assess how many of the movants' witnesses would actually be inconvenienced and balance that against inconvenience to other witnesses, and it is a good reason to ignore the movants' speculation about convenience altogether.  *Candela Corp. v. Palomar Medical Techs., Inc.*, 2007 WL738615, at *4 (explaining that "the moving party must

11

make more than a general allegation that the key witnesses are inconveniently located . . . [it] must specifically identify key witnesses and outline the substance of their testimony"). Although *Volkswagen* indicates that the movant need not submit affidavits from its potential witnesses, see 545 F.3d at 317 & n.12, it did not change the rule that the movants must still explain who the witnesses are and what their testimony will be. After all, the *Volkswagen* movants **had** identified the witnesses and the substance of their testimony was clear from their identities (accident witness and accident investigator). *Id*. Therefore, the movants' general assertions of inconvenience should be disregarded.

Even assuming some or all of the movants' witnesses would be inconvenienced if the case remains in Texas, Centre One's primary witness, Mr. Feuer, will be inconvenienced if it moves to New Jersey, as will witnesses from the Verizon entities in Texas. Vonage downplays Mr. Feuer's inconvenience by focusing on flight time rather than the additional 1,200 miles he will have to travel. (Doc. No. 39 at 5.) But this Court's cases demonstrate that travel distance is the relevant metric. *Novartis*, 2009 WL 349760, at *5 (looking to additional travel distance to North Carolina from California rather than comparing travel times); *Invitrogen*, 2009 WL 331889, at *3 (same for California to Maryland). In any event, Mr. Feuer is in the best position to know which forum is more convenient for him, and he believes it is Texas.

Finally, the inconvenience to numerous potential third-party witnesses if the case is sent to New Jersey makes this case a far less appropriate candidate for transfer than even *Novartis*, *Invitrogen*, *J2 Global*, or *MHL Tek*. This District has long recognized that inconvenience to non-party witnesses is more important convenience to party witnesses. *In re Triton Ltd. Securities Litigation*, 70 F. Supp. 2d 678, 690 (E.D. Tex. 1999) ("It is the convenience of non-party witnesses, rather than of employee witnesses, however, that is the more important factor and accorded greater weight."). Although the Court has reserved judgment on whether this remains true after *Volkswagen* and *TS Tech*, *see J2 Global*, 2009 WL 440525, at *3, there is nothing in either opinion to suggest it does not—especially where the movants have failed to identify the employee witnesses they believe will be inconvenienced.

In sum, transfer will be less convenient for Mr. Feuer, numerous potential third-party witnesses, and potentially some of Verizon's witnesses. Given those facts, the movants have not clearly demonstrated that this factor weighs in favor of transfer. *Novartis*, 2009 WL 349760, at *5; *Invitrogen*, 2009 WL 331889, at *3; *J2 Global*, 2009 WL 440525, at *3-5; *MHL Tek*, 2009 WL 440627, at *4.

### 4. The Factor Regarding Other Practical Problems that Make the Case's Trial Easy, Expeditious, and Inexpensive is Not at Issue.

Neither Vonage nor deltathree argues that this factor supports transfer.

## B. The Public Factors Do Not Weigh in Favor of a Transfer.

### 1. Transfer to New Jersey Could More than Double the Time to Trial.

The most recent Federal Court Management Statistics show that the average time to trial for a civil case in the Eastern District of Texas is 18.5 months, while the average time to trial in the District of New Jersey is 38.5 months. (Ex. K.) In addition, the Eastern District of Texas has adopted district-wide patent rules that "are designed to manage patent cases swiftly and efficiently." *See Network-1*, 433 F. Supp. 2d at 800. Although the District of New Jersey recently implemented Patent Local Rules of its own, the Rules have only been in effect since January 2009, so there is less experience with the Rules and less precedent regarding their application. Transferring the case could therefore double the time to trial, and this factor weighs against transfer.

### 2. Texas Has at Least the Same Local Interest as New Jersey in Resolving this Case.

Several local interests tie this case to Texas. First, VCI engaged in extensive negotiations with Mr. Feuer in Irving, Texas, which culminated in its testing of his invention using its broadband network there. Centre One will need discovery regarding those negotiations as well as the question of how the Verizon entities ultimately developed their accused FiOS system in Texas.

13

Second, Verizon ultimately launched its FiOS service in Texas, has invested $2.5 billion to build network architecture in Texas, and has two operating entities in Texas that employ more than 16,500 people (over 12 times as many employees as Vonage says it has in New Jersey). Thus, Texas certainly has an interest in determining whether these two local companies are liable for patent infringement, an interest that is underscored by VCI's choice to unveil one of its accused products here. The connections of VCI and the Verizon Operating Entities to Texas completely undermine the movants' efforts to cast this as a New Jersey dispute, distinguish this case from *Simmons* and *Odom*—where all the events leading up to the suit and all key witnesses were in the transferee forum, and demonstrate that this factor weighs against transfer.

Finally, the movants admit to offering their accused services in Texas. (*See* Doc. No. 38 at ¶ 7 (deltathree); Doc. No. 30 at ¶ 7 (Vonage).) Those concessions demonstrate that the residents of the Eastern District of Texas have at least the same connection to the wrongful conduct at issue in this case as the residents of New Jersey. *Novartis*, 2009 WL 349760, at *6 ("In a suit where an allegedly infringing product is sold nationwide, the Federal Circuit has stated that no one venue has 'more or less of a meaningful connection to [the] case than any other venue.'"); *J2 Global*, 2009 WL 440525, at *6 (same). Therefore, the most the movants could show is that this factor is neutral.

### 3. This District is Equally Familiar with Patent Law as the District of New Jersey.

This factor does not support transfer because this Court is certainly as capable of applying patent law as the District of New Jersey. *TS Tech*, 551 F.3d at 1320.

### 4. There are no Issues Involving Conflict of Laws or the Application of Foreign Law.

This factor is inapplicable, as the movants concede (and Centre One agrees) that no conflict of laws or foreign law issues exist.

## V. CONCLUSION

This is not a New Jersey-based case: the parties and relevant evidence are scattered throughout the country, and transfer will make attending trial less convenient for a number of witnesses. This District is centrally located within the United States, and it has the experience and specialized rules conducive to handling such a large-scale patent litigation. Therefore, Vonage and deltathree's transfer motions should be denied.

Dated:  March 23, 2009    FISH & RICHARDSON P.C.

By: */s/ Jennifer K. Bush*
    Thomas M. Melsheimer
    Tex. Bar No. 13922550
    R. Ritch Roberts III
    Tex. Bar No. 24041794
    FISH & RICHARDSON P.C.
    1717 Main Street
    Suite 5000
    Dallas, TX 75201
    Tel: (214) 747-5070
    Fax: (214) 747-2091

    Robert M. Parker
    Tex. Bar No. 15498000
    PARKER, BUNT & AINSWORTH, P.C.
    100 E. Ferguson
    Suite 1114
    Tyler, TX 75702
    Tel: (903) 531-3535
    Fax: (903) 533-9687

    Jennifer K. Bush  (pro hac vice)
    FISH & RICHARDSON P.C.
    12390 El Camino Real
    San Diego, CA 92130
    Tel: (858) 678-5070
    Fax: (858) 678-5099

Attorneys for Plaintiff
Centre One

Of Counsel:

Juanita R. Brooks
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Tel: (858) 678-5070
Fax: (858) 678-5099

Robert E. Hillman
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, MA 02110
Tel: (617) 542-5070
Fax: (617) 542-8906

Michael J. Kane
William R. Woodford
FISH & RICHARDSON P.C.
3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, MN 55402
Tel: (612) 335-5070
Fax: (612) 288-9696

**CERTIFICATE OF SERVICE**

      I hereby certify that all counsel of record, who are deemed to have consented to electronic service are being served this March 23, 2009, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on the same date.

                                                  */s/ Jennifer K. Bush*
                                                  Jennifer K. Bush