IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| CENTRE ONE,<br><br>               Plaintiff,<br><br>   v.<br><br>VONAGE HOLDINGS CORP.,<br>et al.,<br><br>               Defendants. | Case No.:  6:08-cv-467 LED |

**PLAINTIFF CENTRE ONE'S OPPOSITION TO THE
VERIZON REGIONAL OPERATING ENTITIES' MOTION TO DISMISS
<u>FOR LACK OF PERSONAL JURISDICTION</u>**

**I.     INTRODUCTION**

The Verizon regional operating entities (the "Verizon defendants") work together to offer a "converged" telecommunications system that enables subscribers of their infringing FiOS Digital Voice service to make and receive calls to or from anywhere in the country—including Texas.  (*See* Exs. A; B.)  For example, FiOS subscribers in Texas are able to receive infringing phone calls originating in other states because the other Verizon defendants cooperate with Verizon Southwest[1]—the Verizon entity that offers the FiOS service in Texas and does not contest this Court's jurisdiction—by providing the use of their equipment to route calls to FiOS subscribers in Texas.  Similarly, FiOS subscribers elsewhere in the country are able to receive calls placed from within Texas because Verizon Southwest infringes in Texas by providing use of its equipment to route those calls to out-of-state FiOS subscribers.  Moreover, as discussed in Centre One's opposition to Verizon Communications Inc.'s ("VCI") co-pending motion to

---

[1] This defendant's full name is GTE Southwest Incorporated (dba Verizon Southwest).

dismiss, the evidence reflects that this cooperation is all masterminded by VCI, the parent of the Verizon defendants.

Despite the fact that all of the Verizon defendants are working together on a daily basis to allow infringing telephone calls to be made to and from Texas, through this and their other pending motions, they seek to splinter this case so that Centre One cannot obtain its full remedy for Verizon's infringement in any single court. At the mastermind level, VCI has pointed its finger at the Verizon regional operating entities, saying that they are the true culprits, that it does nothing, and that this Court therefore lacks personal jurisdiction over it. Now, by way of this motion, many of the regional operating entities have also moved to dismiss for lack of personal jurisdiction on the grounds that they only operate locally, and do not sell infringing services in Texas. (Doc. No. 90 at 2-3.)

These arguments are betrayed by the facts: with VCI directing their activities, the Verizon defendants are all involved in infringing calls made to and from Texas. As such, it is eminently fair and reasonable to exercise personal jurisdiction over them here, and the Court should deny the Verizon movants' motion to dismiss. In the alternative, Centre One requests an opportunity to take jurisdictional discovery to gather additional evidence regarding the relationships among the Verizon defendants and the coordination and collaboration involved in their use of their infringing Voice over Internet Protocol network.

## II.    STATEMENT OF FACTS

The movants are 11 Verizon regional operating entities responsible for providing Verizon's infringing FiOS Digital Voice service to subscribers in their respective regions. (Ex. C; *e.g.*, Ex. D at 1.) Three of the Verizon defendants, including the entity that offers the FiOS service in Texas—Verizon Southwest—do not contest this Court's jurisdiction. Each of the Verizon defendants remains responsible within its respective service area for the provision of

telephone services, financial performance and regulatory matters. (*E.g.*, Ex. D at 1.) Directed by their common parent, Verizon Communications, Inc., they work together with Verizon Southwest to enable a FiOS subscriber to receive calls from anywhere in the nation. (Ex. A; *e.g.*, Ex. D at 1, 5.)

The patent-in-suit, U.S. Patent No. 7,068,668 and the accused systems and methods involve what is now commonly know as Voice over Internet Protocol ("VoIP") technology. VoIP technology allows individuals to make and receive telephone calls over an IP network, such as the Internet, instead of or in conjunction with the public switched telephone network ("PSTN"). The Verizon defendants' infringing VoIP services include FiOS and VoiceWing, both of which use equipment that interfaces with the PSTN to make Verizon's national VoIP calling plans possible.

Claim 1 of the '668 Patent offers the Court a useful example.[2] Claim 1 concerns a VoIP system that includes the elements of "a computer controlled switch" and "gate interface circuitry," both of which are located close to where the person who initiates the call is located.

> 1. A system for providing real-time voice communication between devices connected to an Internet Protocol (IP) network and devices connected to a public switched telephone network (PSTN), comprising:
>
> > a computer controlled switch operable for use by subscribers and adapted for connection to a local public switched telephone network, receiving calls from the IP network and the PSTN, and routing calls to the PSTN and the IP network; and
> >
> > gate interface circuitry connected to the computer controlled switch and adapted for connection to the IP network;
> >
> > said computing controlled switch containing, for each subscriber, destination addresses on the PSTN and the IP network;

---

[2] Centre One's infringement contentions set forth its claims against Verizon in more detail. The discussion offered here is merely an example for the Court and does not modify or limit those infringement contentions in any way.

> whereby calls to a subscriber received by the computer controlled switch are automatically routed to each destination address on the PSTN or the IP network for that subscriber, wherein said computer controlled switch receives an incoming call from the IP network or the PSTN and simultaneously routes the call to a plurality of pre-designated destination addresses on the IP network, on the PSTN, or on both the IP network and the PSTN.

'668 patent at 7:16-39.  Use of the FiOS system may infringe this claim in a number of ways.

Take, for example, a FiOS subscriber in Texas who receives a phone call from a friend in Florida who has Verizon's regular phone service.  The Florida individual will begin a standard analog call in Florida with an ordinary telephone.  That analog signal will travel across the PSTN lines to a computer controlled switch (e.g., servers and a gateway) in Florida that connects the FiOS system to the PSTN.  (*See, e.g.*, Ex. E.)  The publicly available information indicates that the computer controlled switch would be owned and operated by Verizon Florida LLC (or another geographically proximate Verizon operating entity).[3]  (*See* Ex. G at 1, 5.)  The FiOS computer controlled switch will then convert the analog signal into IP packets and route the signal to destination(s) that correspond(s) to the telephone number the Florida resident dialed.[4]  (*See* Exs. A; F; I.)  The Texas FiOS subscriber's telephone(s) will then ring, and if the subscriber answers, the call will go forward.  This example is representative of the way the system functions for calls made anywhere in the United States to a FiOS subscriber in Texas.

Similarly, if a Texas individual using Verizon's regular telephone system calls a FiOS subscriber in Florida, the process works in reverse.  In order for the Florida FiOS subscriber to receive the call, the Texas individual begins a standard analog call in Texas with an ordinary

---

[3]  The publicly available information indicates that the gateways have limited capacities and tend to be located in relatively close geographic proximity to a caller's location.  (*See* Exs. E; F.)  However, in the absence of discovery, Centre One does not know specifically where each of Verizon's computer controlled switches is located.

[4]  The FiOS system may simultaneously route the call from the Florida resident to multiple destinations that the Texas resident maintains on the PSTN and/or IP network.  The FiOS User Guide refers to this service as the "simultaneous ring feature." (Ex. H at 9.)

telephone. That analog signal will travel across the PSTN lines and be routed to a computer controlled switch in Texas that connects the FiOS system to the PSTN. (*See, e.g.*, Ex. E.) The computer controlled switch would be owned and operated by one of the non-moving defendants (such as Verizon Southwest or a geographically proximate Verizon operating entity). (*E.g.*, Ex. D at 1, 6.) The FiOS computer controlled switch converts the analog signal into IP packets, and they are routed to the Florida FiOS subscriber as described above. (*See* Exs. A; F; I.) This example is representative of the way the system functions for calls made anywhere in Texas to FiOS subscribers around the country.

The Verizon movants' motion to dismiss fails to address the fact that they own and operate the equipment used by FiOS subscribers to receive calls from outside of Texas, and also that they use Verizon Southwest's equipment in Texas to ensure that calls placed to their FiOS subscribers in their local regions will be routed to those subscribers from Texas. For instance, in the example of the Texas FiOS subscriber, the FiOS service for which that subscriber pays Verizon Southwest uses the computer controlled switches and other equipment owned and operated by the other operating entities in order to receive calls from around the country. Both parts of the equation (the local entity selling the service, and the non-Texas entities allowing the use of their equipment to route calls to Texas) work together to infringe the '668 Patent, and they do so by design. (*See* Ex. A; C.) Presumably[5] this does not occur through chance, but through contracts or other agreements by which the Verizon defendants (such as Verizon Florida) purposefully seek out and do business with Verizon Southwest (the Verizon entity in Texas), gain permission to use the equipment in Texas to route calls to FiOS subscribers in their locales, and return the favor by letting Verizon Southwest use their equipment to enable FiOS subscribers

---

[5] We say "presumably" because, in the absence of discovery, the particulars of the business transaction are not transparent given the lack of public information.

in Texas to receive calls from around the country.

The realities of nationwide calling demonstrate that, far from being 11 local companies that direct their activities solely to the state or region in which they have subscribers, each movant purposefully directs its activities to other states outside its region, including Texas.

### III. LEGAL FRAMEWORK

Some of the legal standards for this motion are addressed in Centre One's opposition to VCI's motion to dismiss for lack of personal jurisdiction. (*See* Doc. No. 47 at 3-4.) Nevertheless, Centre One reproduces them again here for the Court's convenience.

Because the Texas long-arm statute is coextensive with limits of due process, this Court need only determine whether sufficient contacts exist between each of the movants and the State of Texas to satisfy Constitutional due process requirements. *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000). A court may exercise specific jurisdiction over a claim of patent infringement when: (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair. *Akro Corp. v. Luker*, 45 F.3d 1541, 1548-49 (Fed. Cir. 1995). Once a plaintiff establishes the first two factors are present, the burden shifts to the defendant to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. *Id.*

Centre One need only demonstrate facts sufficient to support a *prima facie* case of personal jurisdiction over the movants. All uncontested facts submitted by Centre One must be taken as true, and all contested facts *must be resolved in Centre One's favor*. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002); *D.J. Invs. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir. 1985).

IV.   **ARGUMENT**

   A.   **The Verizon Regional Operating Entities Are Subject to Personal Jurisdiction in Texas.**

The movants are subject to personal jurisdiction in Texas at least because (1) they use equipment in Texas to enable FiOS subscribers around the country to receive infringing calls originating in Texas, (2) they use their equipment to route calls placed in their locales to FiOS subscribers in Texas, (3) they have taken "affirmative steps" to facilitate the direct infringement of Verizon Southwest in Texas, and (4) they engage in a "strategic alliance" with Verizon Southwest in Texas.

   1.   **The Movants Use Equipment in Texas to Allow FiOS Subscribers Outside of Texas to Receive Calls Originating in Texas.**

Where, as here, a defendant uses and relies upon equipment located in Texas to provide services to customers located outside Texas, it is subject to personal jurisdiction in Texas for patent infringement claims related to those services. *See Freedom Wireless, Inc. v. Cingular Wireless LLC*, 2008 WL 4500698 (E.D. Tex.); *T-Netix, Inc. v. Global Tel*Link Corp.*, 2007 WL 2819742 (E.D. Tex.). In *Freedom Wireless*, the Court exercised personal jurisdiction over a foreign corporation that provided cellular telephone service exclusively to customers outside Texas but which contracted with a Texas co-defendant for use of equipment located in Texas. *Id*. at *1. The plaintiff alleged that calls placed by the foreign defendant's customers required communications with the equipment in Texas, and the Court found this sufficient to establish a *prima facie* case of personal jurisdiction. *Id*. at *2; *see also Freedom Wireless, Inc. v. Suncom Wireless Holdings, Inc.*, 2008 WL 906281, *2 (E.D. Tex.) (reaching same result under similar facts but with a different defendant). Similarly, in *T-Netix*, a foreign defendant had an ongoing business relationship with a Texas company that supplied services and equipment related to long

7

distance calling and the plaintiff alleged that those activities performed some of the steps of the patent-in-suit. 2007 WL 2819742, at *2. The Court found that this was sufficient to establish personal jurisdiction. *Id*.

The Verizon movants have availed themselves of the Texas forum in order to ensure that each of their FiOS subscribers can receive calls from regular telephone subscribers located in Texas. For example, as described *supra*, Verizon Florida relies upon equipment in Texas to enable its Florida FiOS subscribers to receive calls originating from Verizon Southwest's regular telephone subscribers in Texas. These facts are indistinguishable from those in *Freedom Wireless* and *T-Netix*, and they demonstrate that personal jurisdiction over the movants is proper here, just as it was there. Both cases establish that a company that does not directly market services to customers in Texas is still subject to personal jurisdiction in Texas where equipment in Texas is used to enable the company's sales to subscribers outside Texas. It is no accident that those cases, like this one, involved long-distance telephone service, since the nature of the product requires equipment located near both the parties to the call.

### 2. The Movants Also Use Their Equipment to Route Calls Placed Outside of Texas to FiOS Subscribers Inside of Texas.

In similar fashion, the Verizon movants have availed themselves of the Texas forum by providing their own equipment to ensure each of the Texas FiOS subscribers can receive calls from people located outside of Texas. For example, as described above, Verizon Southwest relies upon Verizon Florida's equipment in Florida to enable its Texas FiOS subscribers to receive calls originating from Verizon Florida's regular telephone subscribers in Florida. Here again, these facts are analogous to those in *Freedom Wireless* and *T-Netix*, and they demonstrate that personal jurisdiction over the movants is proper here in Texas. The movants are subject to

personal jurisdiction in Texas because their equipment outside of Texas is used to enable Verizon Southwest's infringing sales to FiOS subscribers inside Texas.

### 3. The Movants Have Taken "Affirmative Actions to Facilitate" the Direct Infringement of Verizon Southwest in Texas.

In addition, if, as here, a defendant is alleged to indirectly infringe and thereby aid the direct infringement of others in the district, it is subject to personal jurisdiction. *See Kinetic Concepts, Inc. v. Bluesky Med. Corp.*, 2004 WL 2550586 (W.D. Tex. Sept. 24, 2004); *see also Ideal Instruments Inc. v. Rivard Instruments Inc.*, 434 F. Supp. 2d 598 (N.D. Iowa 2006). In *Kinetic Concepts*, the Court exercised personal jurisdiction over a foreign company that was alleged to have taken "affirmative actions to facilitate" the direct infringement of another defendant in Texas. *Kinetic Concepts*, 2004 WL 2550586, at *6.

In *Ideal Instruments,* the Court exercised personal jurisdiction over both a Canadian company alleged to have directly infringed, and its president (a Canadian citizen) alleged to have induced the direct infringement by his company in the forum state. *Ideal Instruments*, 434 F. Supp. 2d at 612-615. The Court found that it did have personal jurisdiction over the defendant's president based on the allegations of induced infringement, based in part on his role in organizing and managing the directly infringing sales of his company:

> [The company president], the inducer, directed [his company], the direct infringer, to establish the distribution channels for [its] allegedly infringing product that created a "regular and anticipated" flow of the product into the state of Iowa and more than "unpredictable currents or eddies," and caused, directed, or induced " '[a]dditional conduct of the defendant [that] indicate[s] an intent or purpose to serve the market in the forum State,'" such as directing the "'marketing [of] the [infringing] product through a distributor who has agreed to serve as the sales agent in the forum state.

*Id.* at 615.  In addition, the company's president had personally visited the state twice to attend trade shows, and had maintained phone calls and correspondence with distributors in the state. *Id* at 614.

Here, like the defendants in *Ideal Instruments* and *Kinetic Concepts,* Centre One alleges that the movants are, at a minimum, indirectly infringing the patent-in-suit by aiding the direct infringement in Texas of Verizon Southwest, which provides services to FiOS subscribers in Texas.  In order for a Texas FiOS subscriber to receive calls from a person in the state or region served by, for example, Verizon Florida, Verizon Florida supplies equipment close to the caller's home, including equipment that is a material component of the "computer controlled switch" and "gateway interface circuitry" that are part of the infringing system whose use Verizon Southwest sells to its customers in Texas.  Thus, the movants are taking "affirmative acts to facilitate" sales of FiOS Digital Voice in Texas by ensuring that users of the service in Texas will be able to receive calls from across the country, just as in *Kinetic Concepts* and *Ideal Instruments*.

Moreover, the movants' post-sale cooperation with Verizon Southwest increases the marketability of FiOS Digital Voice in Texas, since not many consumers would be interested in a telephone service that did not allow them to receive long distance calls, a factor that has also been held to support personal jurisdiction in Texas.  *Gellman v. ADT Sec. Services, Inc.*, 2008 WL 4280351, at *2 (E.D. Tex.) (foreign defendant's providing post-installation services to units sold in Texas "that [made] them commercially viable" provides support to showing minimum contacts with the forum).

### 4. The Movants Have Formed a "Strategic Alliance" with the FiOS Digital Voice Provider in Texas.

Even if the movants' activity did not rise to the level of indirect infringement, they would still be subject to personal jurisdiction given the "strategic alliance" they have formed with Verizon Southwest to ensure that their subscribers can receive calls from Texas, and that Verizon Southwest's subscribers can receive calls from the movants' respective regions. If, as here, a defendant engages in a "strategic alliance" with others who conduct business in Texas and profits from their Texas-based activities, it is subject to personal jurisdiction here. *See Novartis Vaccines and Diagnostics, Inc. v. Hoffman-La Roche Inc.*, 597 F. Supp. 2d 706 (E.D. Tex. 2009). In *Novartis*, the Court exercised personal jurisdiction over a foreign company that did not itself make sales or shipments to Texas and had no facilities in Texas, but who had granted an exclusive license to other defendants who did sell infringing products in Texas. *Id*. at 715-16. Nonetheless, jurisdiction was proper since the company derived a substantial amount of profits based on sales of the product, played a crucial role in placing it in the stream of commerce in Texas, and could therefore reasonably foresee being haled into a Texas court. *Id*.

Just as the foreign defendant in *Novartis*, the movants profit from supplying their equipment to help Verizon Southwest make infringing sales of FiOS Digital Voice in Texas even though they do not have any Texas subscribers of their own. Indeed, the *quid pro quo* between the movants and Verizon Southwest goes beyond that in *Novartis*, because Verizon Southwest turns around and supplies its Texas equipment to the movants so that they can make further profits by selling the FiOS Digital Voice service to customers outside Texas.

      **5.    Exercising Personal Jurisdiction on All of the Verizon Entities in a Single Forum is Reasonable and Advances Notions of Fair Play and Substantial Justice.**

Having established that the movants have substantial contacts in Texas and that the claims against them arise out of those contacts, the burden shifts to them to explain why fair play and substantial justice nonetheless make it improper to assert personal jurisdiction over them. *Akro*, 45 F.3d at 1548-49. Since these considerations so heavily favor the exercise of personal jurisdiction, however, it is worth addressing them now.

If the current motion to dismiss and VCI's motion to dismiss are granted, the result will be that Centre One must file a separate patent infringement lawsuit against each Verizon operating entity in its home state, since the movants' theory is that they are not subject to personal jurisdiction in any state other than where they are incorporated and sell FiOS to subscribers. This would be a tremendous waste of judicial resources, with potentially 12 nearly identical lawsuits spread across the federal court system. As the movants concede, the reasonableness of exercising personal jurisdiction in Texas turns in part on "the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (quoted at Doc. No. 90 at 7.) Creating a plethora of overlapping lawsuits would greatly inconvenience Centre One, would be the least efficient means for the judicial system to resolve the dispute, and would generate a risk of inconsistent results that would undermine the social interest in uniform application of federal patent law. It is eminently reasonable for all the Verizon operating entities to be held to account in a single judicial forum, and Texas is an appropriate forum given that each has substantial contacts here.

**B.     In the Alternative, Centre One Requests Jurisdictional Discovery.**

Where a motion to dismiss under Rule 12(b)(2) raises issues of fact as to jurisdictional allegations made in a complaint, courts allow the parties to engage in discovery directed at jurisdictional issues. *See Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982).

Centre One respectfully submits that the facts it has presented here more than carry its burden of making a *prima facie* case for jurisdiction over the movants. Should the Court however, find that Centre One has not met its burden, Centre One requests access to jurisdictional discovery. The opportunity for jurisdictional discovery would be particularly appropriate here because the agreements that govern the relationships and interactions between Verizon's regional operating entities are not publicly available but must surely exist in order for the FiOS Digital Voice network to function as a cohesive, nationwide system.

**V.     CONCLUSION**

For the foregoing reasons, Centre One respectfully requests that VCI's motion to dismiss be denied, or in the alternative, that Centre One be permitted to take jurisdictional discovery.

Dated: June 16, 2009           FISH & RICHARDSON P.C.

By: */s/ Jennifer K. Bush*
Thomas M. Melsheimer
Texas Bar No. 13922550
R. Ritch Roberts III
Texas Bar No. 24041794
FISH & RICHARDSON P.C.
1717 Main Street
Suite 5000
Dallas, TX 75201
Tel: (214) 747-5070
Fax: (214) 747-2091

Michael J. Kane
FISH & RICHARDSON P.C.
3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, MN 55402
Tel: (612) 335-5070
Fax: (612) 288-9696

Juanita R. Brooks
Jennifer K. Bush
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Tel: (858) 678-5070
Fax: (858) 678-5099

Robert M. Parker
Robert Christopher Bunt
PARKER, BUNT & AINSWORTH, P.C.
100 E. Ferguson
Suite 1114
Tyler, TX 75702
Tel: (903) 531-3535
Fax: (903) 533-9687

Attorneys for Plaintiff
Centre One

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

                                      */s/ Jennifer K. Bush*
                                      Jennifer K. Bush