IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| CENTRE ONE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CASE NO. 6:08CV467 |
| | § | |
| VONAGE HOLDINGS CORP., et. al, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Verizon Communication Inc.'s ("VCI") motion to dismiss for lack of personal jurisdiction (Docket Nos. 34 & 60); Verizon California Inc., Verizon Delaware LLC, Verizon Florida LLC, Verizon Maryland Inc., Verizon New England Inc., Verizon New Jersey Inc., Verizon New York Inc., Verizon Northwest Inc., Verizon Pennsylvania, Inc., Verizon South Inc., Verizon Virginia Inc.'s ( collectively "the Regional Verizons") motion to dismiss for lack of personal jurisdiction (Docket No. 90); Deltathree Inc.'s ("Deltathree") motion to transfer venue (Docket No. 39); Vonage America, Inc., Vonage Holdings Corp.'s (collectively "Vonage") motion to transfer venue (Docket No. 29); and Vonage's motion to sever (Docket No. 58). For the reasons stated below, the motions are **DENIED**.

## BACKGROUND

On December 5, 2008 Centre One filed this action for infringement of U.S. Patent No. 7,068,668 (the "'668 patent) against Vonage, VCI, and Deltathree. Vonage and Deltathree then

1

moved to transfer venue to the District of New Jersey, and VCI filed its motion to dismiss for lack of personal jurisdiction. On March 23, 2009, Centre One amended its complaint, joining the Regional Verizons, Verizon Long Distance, LLC ("VLD"), and GTE Southwest Inc. d/b/a Verizon Southwest ("Verizon Southwest"). Vonage then filed its motion to sever Centre One's claims against it from the other Defendants. VCI and Deltathree have filed non-opposition notices to Vonage's severance motion. Finally, VCI renewed its motion to dismiss with regard to Centre One's amended complaint, and the Regional Verizons moved to dismiss for lack of personal jurisdiction. VLD and Verizon Southwest answered the amended complaint, thus consenting to jurisdiction.

The '668 patent generally describes what is commonly known as Voice over Internet Protocol ("VoIP") technology. VoIP allows individuals to make telephone calls over an internet (IP) network rather than a public switch telephone network ("PSTN"). Centre One alleges that Defendants infringe the '668 patent by offering nationwide VoIP service. Particularly important for the purposes of jurisdiction, Centre One accuses VCI and the Regional Verizons of marketing a VoIP service known as "FiOS" and "Voicewing." Generally, the patented technology operates by converting PSTN protocol signals into IP signals ("packets") and then sending the IP packets to the receiving telephone number.

## MOTIONS TO DISMISS

### *Applicable Law*

Both VCI and the Regional Verizons move to dismiss for lack of personal jurisdiction. *See* FED. R. CIV. P. 12(b)(2). In a patent case, personal jurisdiction intimately relates to patent law, and Federal Circuit law governs the issue. *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201

(Fed. Cir. 2003).  If the parties have not conducted jurisdictional discovery, a plaintiff only needs to make a prima facie showing that the defendant is subject to personal jurisdiction, and the pleadings and affidavits are to be construed in the light most favorable to the plaintiff.  *Id.*  Further, courts will "resolve in [the party seeking jurisdiction's] favor, all conflicts between the facts contained in the parties' affidavits and other documentation." *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000).[1]  A court can exercise personal jurisdiction over an out-of-state defendant if the forum state's long-arm statute permits jurisdiction without violating federal due process as delineated in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1371 (Fed. Cir. 2000); *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1376-77 (Fed. Cir. 1998).

"The Texas long-arm statute reaches 'as far as the federal constitutional requirements of due process will allow.'" *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002) (quoting *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991)).  Thus, the analysis of Texas's long-arm statute collapses into the federal due-process inquiry.  Due process requires an out-of-state defendant have minimum contacts with the forum such that maintaining the suit does not offend traditional notions of fair play and substantial justice.  *Int'l Shoe*, 326 U.S. at 316.

Rule 12(b)(2) allows a court to dismiss a case where the court does not have personal

---

[1] The Court is unaware of a Federal Circuit case expressly addressing how a district court should proceed when the factual allegations of the party seeking jurisdiction are controverted.  However, the Federal Circuit has held that with regard to procedural matters that are not unique to patent issues, courts shall apply the law of the particular regional circuit court where appeals from the district court would normally lie.  *See Lab. Corp. of Am. Holdings v. Chiron Corp.*, 384 F.3d 1326, 1330 (Fed. Cir. 2004).  Accordingly, the Court will apply the rule of the Fifth Circuit.

jurisdiction over the defendant. FED. R. CIV. P. 12(b)(2). Once a movant challenges a court's jurisdiction over him, the party asserting jurisdiction bears the burden to show the movant has minimum contacts with the forum state to support jurisdiction over the movant. *Pieczenik v. Dyax Corp.*, 265 F.3d 1329, 1334 (Fed. Cir. 2001). If the party asserting jurisdiction makes such a showing, the movant bears the burden to prove the exercise of jurisdiction would be constitutionally unreasonable. *Akro Corp. v. Luker*, 45 F.3d 1541, 1546 (Fed. Cir. 1995).

The minimum contacts requirement may be met by showing either "general" or "specific" jurisdiction over a defendant. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). A court may exercise general jurisdiction over a defendant when the defendant has contacts with the forum state that qualify as "continuous and systematic." *Campbell Pet Co. v. Miale*, 542 F.3d 879, 883 (Fed. Cir. 2008).

In the absence of general jurisdiction a court may nonetheless exercise specific jurisdiction over a defendant where the cause of action "arises out of" or "relates to" the defendant's in state activity. *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1360-61 (Fed. Cir. 2006). This analysis requires courts to inquire "(1) whether the defendant has purposefully directed his activities at residents of the forum; and (2) whether the litigation results from alleged injuries that arise out of or relate to those activities." *Campbell*, 542 F.3d at 884. When these conditions are satisfied the court must then determine whether its assertion of jurisdiction would "comport with fair play and substantial justice." *Id.* at 885. This factor should be applied "sparingly" and only if the defendant has presented a compelling case that the presence of some other considerations would render jurisdiction unreasonable. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477

(1985)).

### *Application*

### The Regional Verizons

In support of their motion to dismiss, the Regional Verizons allege that they have no contacts in Texas. They further allege that their operations are restricted to providing local telephone services to customers only within those limited states that each of the entities serve. None of those states include Texas. Centre One does not contest that the Regional Verizons are neither incorporated nor have places of business in Texas. Rather, Centre One argues that the Regional Verizons and Verizon Southwest work together to provide a telecommunications network. Allegedly, that network allows VoIP calls to enter and leave Texas everyday. For instance, a VoIP customer in Florida placing a call to a customer connected only to a PSTN network in Texas will use both the Florida Regional Verizon and Verizon Southwest's network equipment to facilitate the call. Centre One further alleges that since the Regional Verizons are separate entities, this daily and constant interaction is implemented through contractual agreements between the Regional Verizons and Verizon Southwest for the use of equipment located in Texas. Finally, Centre One alleges that the basis for its allegations of infringement is the process occurring both at the "sending" and "receiving" cites for inter-regional calls.

In response, the Regional Verizons do not deny any of the underlying facts premising Centre One's jurisdictional allegations. Instead, they argue that it is the independent actions of their respective subscribers (choosing to make a call to Texas) that creates contacts with Texas and not any purposeful actions of the Regional Verizons. To support this argument, the Regional Verizons

cite to other courts who have denied having jurisdiction over them. See *Gammino v. Verizon Comm'ns, Inc.,* No. 03-CV-5579, 2005 WL 3560799, at *4-5 (E.D. Pa. Dec. 27, 2005) (denying jurisdiction on the basis that plaintiff could not show that the Regional Verizons were the "alter ego" of the local Verizon provider.); *Verizon Cal. v. Douglas*, No. 01-05-00707-CV, 2006 WL 490888, at *8 (Tex. App.-Houston [1st Dist.] Mar. 2, 2006) (denying jurisdiction on the basis of particular places, people, or instances that Verizon California allegedly had contact with Texas). None of these cases bear on the facts presented here.

Here, it is undisputed that the Regional Verizons directly provide the allegedly infringing instrumentality (VoIP service) to their customers in order to facilitate the use of that instrumentality all over the country. Additionally, the Regional Verizons do not dispute that they have an ongoing business relationship with Verizon Southwest to facilitate the accused instrumentality. *See Freedom Wireless, Inc. v. Cingular Wireless LLC*, 2008 WL 4500698 (E.D. Tex. December 27, 2005) (Ward, J.) (asserting jurisdiction over a telephone provider with no contacts in Texas other than agreements with a co-defendant to facilitate use of equipment located within Texas). Considering that the Court must accept all of Centre One's uncontested allegations as true, Centre One has met its burden of presenting a prima facie case of both general and specific personal jurisdiction over the Regional Verizons in Texas. *See Alpine View Co.*, 205 F.3d at 215.

**VCI**

In its motion, VCI alleges that it is simply a holding company that does not make, use, sell, or offer for sale any goods or services to consumers in any state including Texas. Though VCI may own stock in the Regional Verizons, it alleges that it is a separate and distinct entity that, in no way,

6

does business in the state of Texas.  Centre One responds that this Court has either general or specific jurisdiction with VCI because 1) VCI conducted negotiation with Donald Feuer, the named inventor of the '668 patent, in Irving, Texas and 2) there is evidence that VCI is directing infringement of the patent by the Regional Verizons.  In support of its allegation that VCI "directs" infringement, Centre One produces 1) VCI's Securities and Exchange Commission ("SEC") filings referring to VCI's general investment into VoIP technology, 2) selected portions of the "Verizon.com" website indicating that "Verizon Texas" has spent $2.5 billion in the last five years in network infrastructure, and 3) an excerpt from a biography of an elected officer of VCI, and president of a third-party entity Verizon Telecom, purportedly indicating that VCI and the Regional Verizons operate together.

First, VCI's alleged negotiations with Mr. Feuer do not form a basis for either general or specific jurisdiction.  A single contact involving no transaction of business in Texas may not serve as the basis for "continuous and systematic" contacts as general jurisdiction requires.  *See Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1018 (Fed. Cir. 2009) (noting that the standard for "general jurisdiction" is "fairly high"); *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 612 (5th Cir. 2008) (finding that a corporation making $5.2 million worth of purchases in Texas, having two employees in Texas, and entering into a contract with Texas companies was insufficient to support general jurisdiction); *Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999) ("The mere renting or ownership of property in a forum is not enough [to create a contact with that forum] when that property is not used to conduct business in the forum.").  Additionally, Centre One makes no showing of how its injuries relating to patent infringement "arise

7

out of" or "relate to" the meeting of VCI and the inventor of the '668 patent. The negotiations relate to no element of infringement, either direct or indirect, and may at best serve as evidence pertaining to the issue of willfulness. Mr. Feuer is not a party to this suit, alleges no personal injury, and was unaffiliated with Centre One at the time of the negotiations. Centre One fails even to allege that the '668 patent played a major role in the negotiations. In short, this suit does not "arise out of" or "relate" to Mr. Feuer's negotiations with VCI.

Centre One's "direction" theory of jurisdiction is also deficient. Generally, a company cannot base its arguments on the contacts held by other companies. *See Red Wing Shoe Co., v. Hockerson-Halberstadt, Inc.,* 148 F.3d 1355, 1361 (Fed. Cir. 1998) ("In simple terms, doing business with a company that does business in Minnesota is not the same as doing business in Minnesota."). Thus, the fact that VCI owns or does business with companies with contacts in Texas does not allow it to rely on those contacts for jurisdictional purposes. The law is clear that jurisdiction may not be imputed on to a parent corporation absent a showing that 1) its subsidiaries are subject to personal jurisdiction within that court and 2) the corporate veil should be pierced. *See Sys. Div., Inc. v. Teknek Elects., Ltd.*, 253 Fed. Appx. 31, 35 (Fed. Cir. 2007). Veil piercing generally requires that a party show "such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist" and that "if the acts are treated as those of the corporation alone, an inequitable result will follow." *Id.*

While Centre One's evidence tends to suggest that VCI and the Regional Verizons hold themselves out as a single entity, it does not rise to the level of "such a unity of interest and ownership" that veil piercing generally requires. However, Center One's evidence does suggest that

evidence of corporate unity between the VCI and Regional Verizons may exist. Thus, the Court has ordered limited jurisdictional discovery as provided for at the hearing. *See Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1148 (5th Cir.1985) ("[J]urisdictional discovery is within the trial court's discretion and will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse."). Accordingly, VCI's motion is denied without prejudice to refiling its motion within 10 days after the date of this order or 10 days after the completion of the jurisdictional discovery provided for at the hearing, whichever is later.

## MOTIONS TO TRANSFER VENUE AND SEVER

### *Applicable law*

Vonage and Deltathree argue that this case should be transferred under 28 U.S.C. § 1404(a) to the District of New Jersey. Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." As always, a district court has broad discretion in deciding whether to order a transfer. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*In re Volkswagen II*"). The first inquiry when analyzing a case's eligibility for 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

Once that threshold inquiry is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re*

9

*TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009). The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re TS Tech*, 551 F.3d 1319. The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re TS Tech*, 551 F.3d 1319.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen II*, 545 F.3d at 314-15. Rather, the plaintiff's choice of venue contributes to the defendant's burden in proving that the transferee venue is "clearly more convenient" than the transferor venue. *In re Volkswagen II*, 545 F.3d at 315; *In re TS Tech*, 551 F.3d 1319. Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 314-15.

### *Application*

## Jurisdiction

No party contests that jurisdiction would be proper over Defendants in the District of New Jersey, thus the Court assumes that this threshold inquiry has been met.

## The Relative Ease of Access to Sources of Proof

Despite technological advances that certainly lighten the relative inconvenience of

transporting large amounts of documents across the country, this factor is still a part of the transfer analysis. *In re Volkswagen II*, 545 F.3d at 316. Therefore, courts have analyzed this factor in light of the fiction that voluminous documents must be transported from their physical location (supposing that electronically stored documents are, in fact, physical) to the trial venue. *See In re Volkswagen II*, 545 F.3d at 316. Thus, almost invariably, this factor will turn upon which party will most probably have the greater volume of documents relevant to the litigation and their presumed physical location in relation to the transferee and transferor venues. *See, e.g.*, *In re Volkswagen II*, 545 F.3d at 314-15; *Jackson v. Intel Corp.*, 2:08-cv-154, 2009 WL 749305 at *2 (E.D. Tex. March 19, 2009) (Ward, J.) (analyzing the volume and location of parties documentary evidence); *Robles v. USA Truck, Inc.*, L-08-122, 2009 WL 677835 at *5 (S.D. Tex. Mar 12, 2009) (same).

The Vonage entities both have principal places of business in New Jersey, and they aver that all documents relating to the alleged infringement are housed in New Jersey. Deltathree has its principal place of business in New York City. It alleges that documents within its possession relevant to this litigation are located in either New York, New Jersey, Georgia, or Israel. However, Vonage and Delta three have failed to account for the voluminous documents within the possession of the various Regional Verizons located across the United States. Taking these documents into account, as the Court must, New Jersey is a less convenient venue than Texas for trial of this action. This is truly a national dispute, and the fact that documents in the possession of a minority of Defendants are located in and around New Jersey does not make that venue more clearly convenient than Texas. This factor weighs against transfer.

**The Availability of Compulsory Process to Secure the Attendance of Witnesses**

As the parties have not identified any unwilling witnesses in this case, this factor remains neutral.

**The Cost of Attendance for Willing Witnesses**

This factor is analyzed giving broad "consideration [to] the parties and witnesses in all claims and controversies properly joined in a proceeding." *In re Volkswagen I*, 371 F.3d at 204. Further, regardless of the actual likelihood of a particular witness testifying at trial, the relative materiality of witnesses' testimony is irrelevant to this inquiry. *See In re Genentech*, 566 F.3d 1338, 1343-44 (Fed. Cir. 2009) ("Requiring a defendant to show that a potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary."). Thus, all potential material and relevant witnesses must be taken into account for the transfer analysis, irrespective of their centrality to the issues raised in a case.

According to this principal, regardless of the application of the Fifth Circuit's 100-mile rule, Vonage and Deltathree have wholly failed to show that New Jersey is clearly more convenient than Texas for all of the potential witnesses in this case. *See In re Volkswagen I*, 371 F.3d at 204-205. As noted, the Regional Verizon entities are independent entities operating around the country. In fact, Verizon Southwest, located in Irving, Texas, employs 16,500 people within this state alone. There are likely to be a great number potential witnesses testifying regarding Verizon Southwest's operations in Texas as well as its relationships with the other Defendants. Vonage and Deltathree cannot claim that the "majority" of fact witnesses reside in and around New Jersey. In fact, even prior to the joinder of the Regional Verizons and Verizon Southwest, Centre One had specifically

identified 11 potential fact witnesses located closer to Texas than New Jersey.  *See* Centre One's

Response, Docket No. 51 at 4.  As with documents, the potential witnesses involved in this action

are scattered throughout the country.  As many of these witnesses reside in Texas, the District of

New Jersey is not clearly more convenient for the witnesses in this case as a whole.  This factor

weighs against transfer.

**Other Practical Problems**

The parties do not identify any other practical problems involved with maintaining this suit

in Texas.  However, Vonage has filed a concurrent motion to sever its case from the other

Defendants.  Although Deltathree argued that it would be more convenient for it to try this case in

New Jersey prior to the joinder of the Regional Verizons, it does not join in Vonage's motion to

sever. Thus, Vonage essentially argues that "proper" application of § 1404(a) analysis requires that

it alone be severed from the remaining Defendants and transferred to the District of New Jersey.

The Federal Circuit has emphatically instructed that the existence of duplicative suits

involving the same or similar issues creates practical difficulties that will weigh heavily in favor or

against transfer (in order to try duplicative suits in the same venue).  *In re Volkswagen of Am., Inc.*,

556 F.3d 1349, 1351 (Fed. Cir. 2009) ("*In re Volkswagen III*").  In its severance motion, Vonage

directly argues that severance is proper so that its then severed case can be transferred to the District

of New Jersey for Vonage's convenience.  This analysis misapplies the law of both severance and

transfer.

"A court may sever properly joined parties on such terms as are just." *MyMail, Ltd. v.*

*America Online, Inc.*, 223 F.R.D. 455, 457 (E.D. Tex. 2004) (Davis, J.).  However, the Supreme

Court has noted that "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960). Further "[u]nder the [Federal Rules of Civil Procedure], the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).

Severing and transferring Vonage's case to the District of New Jersey may be much more convenient for Vonage. However, it would impose a burden on both the federal court system and Centre One to maintain two suits with substantially the same issues in two different venues across the country. This is exactly the kind of inefficiency that severance and, to a lesser extent, § 1404(a) transfer was designed to prevent. Vonage has presented no valid reason to sever its case besides its own convenience. However, Vonage's convenience alone fails to outweigh the glaring inefficiency of prosecuting two, nearly identical, complex patent infringement cases in different fora. Accordingly, Vonage's motion to sever is denied, while this factor remains neutral.

**The Administrative Difficulties Flowing from Court Congestion**

The speed with which a case can come to trial and be resolved is a factor in the transfer analysis. *In re Genentech*, 566 F.3d at 1347. The average time to trial in the Eastern District of Texas is 18.5 months while the average time to trial in the District of New Jersey is 38.5 months. Transfer to New Jersey would effectively add more than a year and a half to the resolution of this case. This factor weighs against transfer.

14

**The Local Interest in Having Localized Interests Decided at Home**

The Fifth Circuit has explained that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *In re Volkswagen I*, 371 F.3d at 206. Thus, this factor analyzes the "factual connection" that a case has with both the transferee and transferor venues. *See In re Volkswagen I*, 371 F.3d at 206. Generally, local interests that "could apply virtually to any judicial district or division in the United States" are disregarded in favor of particularized local interests. *In re Volkswagen II*, 545 F.3d at 318 (in a products liability suit, disregarding local interest of citizens who used the widely-sold product within the transferor venue); *In re TS Tech*, 551 F.3d at 1321.

Both New Jersey and Texas have a particularized local interest in this dispute. The alleged infringement in this case occurs in both venues. Further, Vonage and Deltathree are primarily located in and around New Jersey. Similarly, Verizon Southwest is located in and around Texas. The reality is that a number of districts across the U.S. have particularized local interests in this dispute considering the diverse citizenship of the parties. In simple terms, Vonage and Deltathree cannot show that New Jersey has a clearly greater local interest in this suit than Texas. Thus, this factor weighs against transfer.

**The Familiarity of the Forum with the Law that Will Govern the Case**

The parties do not assert that either the District of Delaware or the Eastern District of Texas has any particular advantage with regard to familiarity with the law governing this litigation. As a result, this factor is neutral.

15

**Avoidance of Unnecessary Problems of Conflict of Laws**

Likewise, the parties have not identified any issues regarding conflicts of laws in this litigation. Thus, this factor is neutral.

**Conclusion**

As noted, the nature and breadth of this action spans across the entire nation and "[w]hile this Court is not prepared to find that nationwide suits-such as this one-must be litigated in a centralized venue, the facts of this case do suggest that the transferee venue is not more convenient for many involved." *Novartis Vaccines & Diagnostics, Inc. v. Hoffman-La Roche Inc.,* 597 F. Supp. 2d 706, 713-714 (E.D. Tex. 2009) (Folsom, J.). As all relevant and contested factors weigh against transfer, Vonage's and Detathree's motions are denied.

**CONCLUSION**

For the aforementioned reasons, the Regional Verizons' motion to dismiss is **DENIED**, Vonage's motion to transfer venue is **DENIED**, Deltathree's motion to transfer venue is **DENIED**, Vonage's motion to sever is **DENIED**, and VCI's motion to dismiss is **DENIED** without prejudice to refile 10 days after the date of this order or 10 days after the jurisdictional discovery provided for at the hearing is complete, whichever is later.

**So ORDERED and SIGNED this 10th day of August, 2009.**

_____
**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**